**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DISTRICT**

| | | |
|---|---|---|
| FRIENDS OF THE CAPITAL CRESCENT TRAIL, et al., | * | |
| | * | |
| Plaintiffs, | * | |
| v. | * | |
| UNITED STATES ARMY CORPS OF ENGINEERS, et al., | * | Civil Case No. 19-cv-00106 (PJM) |
| | * | |
| Defendants, | * | |
| and | * | |
| MARYLAND DEPARTMENT OF TRANSPORTATION and MARYLAND TRANSIT ADMINISTRATION 6 St. Paul Street Baltimore, MD 21202-1614, | * | |
| | * | |
| Proposed Defendant-Intervenors. | * | |

\*    \*    \*    \*    \*    \*    \*    \*

**REPLY TO PLAINTIFFS' OPPOSITION TO MARYLAND'S MOTION TO
INTERVENE**

This is the third lawsuit filed by these plaintiffs challenging Maryland's Purple Line light

rail project (the "Purple Line" or the "Project").  In the first lawsuit, the plaintiffs took "no

position" on the State's motion to intervene to join the Federal Transit Administration ('FTA")

as a defendant, and that motion was granted by the United States District Court for the District of

Columbia (D.D.C. No. 14-01471-RJL (Purple Line I)).  Exhibits A and B.  That lawsuit involved

plaintiffs' challenge to the adequacy of the Environmental Impact Statement prepared jointly by

the Maryland Department of Transportation and the Maryland Transit Administration

(hereinafter collectively "Maryland" or the "State") and the Federal Transit Administration for the Purple Line project ("the Project") under the National Environmental Protection Act.

Plaintiffs' second lawsuit involved a challenge to the FTA's decision to grant federal funding for the Project.  (D.D.C. No. 17-01811-RJL (Purple Line II)).  In the second lawsuit, plaintiffs named the Maryland Department of Transportation as a defendant along with the Federal Transit Administration—and the Maryland Department of Transportation fully participated in this suit through its dismissal in its favor.  As Maryland was a named party, there was no need for Maryland to seek intervention in that case to protect the Project's funding and other interests.  Exhibit C (Purple Line II Complaint at 1).

The plaintiffs have now filed a third lawsuit, challenging the permit granted by the U.S Army Corps of Engineers (the "Corps") to Maryland under Section 404 of the Clean Water Act. The challenged permit grants Maryland the right to implement the Project, as approved by the D.C. Circuit in the Purple Line I litigation, in a manner consistent with the granted permit.  *See Friends of the Capital Crescent Trail v. Federal Transit Admin.*, 877 F.3d 1051 (D.C. Cir. 2017). However, having belatedly discovered that Maryland's participation in the ongoing litigation over its Project is not to their advantage, plaintiffs now oppose such participation.  Maryland has filed this motion to intervene to protect its property interest, and other critical interests in the permit as of right, or in the alternative with the permission of the court.  Plaintiffs limit their opposition to intervention as of right to a claim that Maryland has not sufficiently established that the Corps' representation of Maryland's interests in the litigation will be inadequate. Opposition at 1 (ECF 21).  With regard to permissive intervention, the plaintiffs argue that the Court should deny intervention because it "will needlessly and 'unduly delay or prejudice the adjudication of the original parties' rights.'"  Opposition at 1 (quoting Fed. R. Civ. P. 24(b)(3).

Neither argument has merit.  Maryland, the permit holder, should be allowed to intervene in this litigation to protect its property interest in that permit and in the Project.  Also, Maryland has moved to intervene at the start of this third case.

     **I.**     **THE STATE IS ENTITLED TO INTERVENE AS A MATTER OF RIGHT.**

Plaintiffs' sole argument against Maryland's right to intervene as a defendant in this litigation is their claim that Maryland has not made a "compelling showing" that the Corps cannot adequately represent Maryland's interest in this case.  Thus, they concede that Maryland has established that it has an "interest relating to the property or transaction that is the subject of the action" and that "disposing of the action may as a practical matter impair or impede" the State's "ability to protect its interest."  Fed. R. Civ. P. 24(a)(2).

Relying primarily on *Stuart v. Huff*, 706 F.3d 345 (4th Cir. 2013), plaintiffs claim that the State's interest in the permit would be more than adequately represented by the "premier team of federal attorneys tasked with defending issuance of environmental permits by federal agencies." Opposition at 3.  However, *Stuart* is clearly distinguishable.  At issue in *Stuart* was a claim that a state statute regulating abortion services violated the U.S. Constitution.  The lawsuit was initiated by a group of abortion service providers, and the defendants in the case were various government officials in North Carolina, including the State's Attorney General.

The proposed defendant-intervenors seeking to uphold the constitutionality of the statute were medical professionals, who previously had abortions or who ran pregnancy counseling centers.

Their motion to intervene was filed after learning that the North Carolina Attorney General elected not to immediately appeal the district court's partial grant of the motion for preliminary injunction prohibiting the implementation of some of the provisions of the statute. *Id*., 706 F.3d at 348.  In requesting intervention, the proposed intervenors acknowledged that

they agreed with the ultimate objective of the defendants, *i.e.*, that the state statute should be held constitutional, but disagreed with the defendant's trial strategy in litigating the case.

The district court denied the motion to intervene in *Stuart,* finding that the proposed intervenors had failed to demonstrate that the State Attorney General would not adequately represent their interests in the action.  The Fourth Circuit affirmed.  The Fourth Circuit noted that allowing *private parties* to intervene in a government's defense of a statute "upon only a nominal showing would greatly complicate the government's job."  *Stuart*, 706 F.3d at 351.  The court noted that "[b]oth the government agency and the would-be intervenors want the statute to be constitutionally sustained."  *Id*. at 352.  The court then found that *"[i]n this context*, . . . the putative intervenor must mount a strong showing of inadequacy."  *Id.* (emphasis added).[1]

The context for plaintiffs' challenge to Maryland's permit in this case, however, is fundamentally different than the context in *Stuart.*  First, unlike *Stuart*, plaintiffs' challenge to the permit is not in any way related to or dependent upon a governmental agency defending the constitutionality of a statute, *i.e.* the Clean Water Act.  Rather, the plaintiffs' claims are specifically based on the Corps' decision to grant a Section 404 permit to Maryland based on Maryland's application.  In other words, plaintiffs are challenging a specific permit granted to Maryland for a specific purpose on a specific project — the Purple Line.  Maryland, as the permit applicant and holder, has played a significant role in the development of the facts leading to the granting of the permit and has a unique interest in maintaining the validity of the permit

---

[1] In *Commonwealth of Va. v. Westinghouse Elec. Corp.*, 542 F.2d 214 (4th Cir. 1976), the Fourth Circuit makes clear that the burden to establish inadequacy of representation by existing parties is minimal except when the party seeking intervention has the same *ultimate* objective.  542 F.2d at 216.  Thus, absent a finding that a permit holder and the federal agency granting a permit have the same "ultimate" objective, the burden on the party seeking intervention to establish inadequate representation is minimal.

that was granted in order to complete the Project.  By comparison, the proposed defendant-intervenors in *Stuart* were seeking to lend support for a law passed by the North Carolina legislature, signed by the Governor of North Carolina, and defended by the North Carolina Attorney General.  In that context, the Attorney General for North Carolina was best positioned to represent the interests of all the citizens of North Carolina, and the Attorney General could adequately represent the interests of the proposed intervenor-defendants which were aligned with the "ultimate objective" of defending the constitutionality of the law being challenged.

In contrast, in this case, while both the United States and Maryland share an objective of defending the validity of the permit, the issue of whether they share an "ultimate objective" is more complex and may depend upon what takes place in this litigation.  The ultimate objective of the United States is to ensure that the process employed in issuing the permit to Maryland is found to be valid and in accordance with the Clean Water Act.  The ultimate objectives of Maryland are to ensure that (1) the Project can be completed as planned to provide transportation service and other benefits to its citizens, and (2) the Project can be completed as quickly as possible to protect the investment of millions of tax-payer dollars.  In meeting these ultimate objectives, it is also the objective of Maryland that the prior judgments entered in its favor in Purple Line I and II stand.  The defendant Corps, which was not involved in the prior proceedings with the plaintiffs, does not have a stake in Maryland's transportation needs, expenditure of funds, or the ultimate success of the Purple Line project.  As a result, it is free to resolve the litigation in a way that may satisfy its sole objective, but which may sacrifice, or prejudice Maryland's ultimate objectives.  Simply put, whether the Purple Line is built or when it is built are not ultimate objectives for the Corps.

Although the plaintiffs' claim that they have no dispute with the State of Maryland, the permit under challenge has been issued to the State of Maryland and is a key component of the State's ultimate objective of completing the Purple Line.  Indeed, if the law regarding adequate representation is as plaintiffs claim, then no permit holder would ever be able to obtain intervention as of right, even though the central issue in the case involves a property right owned by the permit holder.

Furthermore, in distinguishing its ultimate goals from those of the federal government, the State has demonstrated in prior litigation that it will by itself undertake, with all due speed, whatever measures available to protect its objectives.  In fact, the variance in the ultimate objectives of the United States and Maryland, and the likelihood that the United States will not "adequately represent" Maryland's interests in this case, is best demonstrated by past litigation involving the plaintiffs, the United States and Maryland surrounding this Project.  In the first Purple Line case, the district court granted partial summary judgment in favor of the plaintiffs in August 2016 and ordered that the Record of Decision be vacated pending further action in compliance with its order.  In making that decision, the district court expressly stated that the remaining issues in the case would be decided at a later, uncertain date.  *Purple Line I,* No. 14-01471, ECF 96 at 2 (D.D.C. Aug. 3, 2016) ("reserve[ing] judgment as to the remaining issues").  In vacating the Record of Decision, the district court prevented Maryland from proceeding to build the Purple Line project.  *See id.* at 9.  After preparing additional analysis required by the district court's order, Maryland and the United States filed renewed motions for summary judgment.  *Purple Line I,* No. 14-01471, ECF 115, 116, 119, 120, 121.  That round of briefing was completed in early January 2017, and the matter was ripe for final adjudication.  At the end of March 2017, facing a potential loss of millions of dollars from the inability to commence

construction that had the capacity to imperil ultimate objectives, Maryland, without participation

by the United States, filed a motion for expedited ruling. *Id.*, No. 14-01471, ECF 133 (Mar. 31,

2017). That motion asked the district court to issue a final judgment on all issues by April 28,

2017. *Id.* at 5.[2] The motion was based on the harm to Maryland being caused by the court's

order vacating the Record of Decision without issuing a final appealable judgment. When the

district court failed to issue a final judgment by the requested date, Maryland, again without

participation by the United States, filed a Petition for Writ of Mandamus with the D.C. Circuit on

May 12, 2017. *In re State of Maryland*, No. 17-5104 (D.C. Cir. May 12, 2017). The Court of

Appeals issued a briefing schedule for the writ on May 17, 2017, requiring the plaintiffs to file a

response to the petition by May 23, 2017. *Id.*, Order (D.C. Cir. May 17, 2017). After the

plaintiffs filed their response, but before the Court of Appeals could issue a decision on the writ,

the district court, on May 30, 2017, issued a final judgment on all issues. Purple Line I, No. 14-

01471, ECF 141, 142 (May 30, 2017). Maryland filed a notice of appeal that same day.[3] *Id.*,

ECF 143 (May 30, 2017).

　　Because the district court's final judgment continued the order vacating the Record of

Decision, Maryland could not proceed with construction. So, Maryland, on June 2, 2017, filed in

the district court a motion for a stay of that order pending appeal. *Id.*, ECF 145 (Jun. 2, 2017).

As its interests differed from those of Maryland, the United States did not participate in the stay

proceedings. When the district court delayed its decision on the request for a stay, Maryland

filed an emergency motion for stay with the Court of Appeals on June 21, 2017,[4] and on July 3,

---

[2] The United States filed a response to that motion, stating that they did not oppose it and that all issues were ripe for decision. *Purple Line I*, ECF 136.
[3] The United States did not file its notice of appeal until July 14, 2017. *Id.*, ECF 158.
[4] The district court finally issued an order denying the stay on June 26, 2017. *Id.*, ECF 153.

2017, Maryland requested expedited consideration of the appeal.  No. 17-5132 (D.C. Cir. Jun. 21 & Jul. 3, 2017)).  Again, the United States did not participate in either motion and filed no papers with the Court of Appeals addressing the motions.  On July 19, 2017, the D.C. Circuit granted Maryland's emergency motion for a stay pending appeal and reinstated the Record of Decision so that Maryland could begin its work to meet its ultimate objectives creating the Purple Line while the appeal was still pending.  *Id.*, Order (Jul. 19, 2017).  The Court of Appeals also granted Maryland's request for an expedited appeal.[5]  *Id.*  The D.C. Circuit's stay and order reinstating the Record of Decision allowed Maryland to initiate construction activities on the Purple Line. Those construction activities continue to this day.  Absent Maryland's emergency request for a stay pending appeal and motion for expedited appeal, the Project would have been further delayed until December 19, 2017[6], when the D.C. Circuit rejected each of plaintiffs' claims and ruled in favor of Maryland and the United States on all counts.  If Maryland had not been given the right to intervene in this first case, it would not have been able to make these critical motions and, it is highly unlikely that it would have been able to take the appeal that lead to the reversal of the district court's decision and gave it the ability to proceed with the Project.

Based on the proceedings in Purple Line I, as recounted above, it is clear that if Maryland had been required to rely solely on representation by the United States, the Purple Line I litigation could be continuing to this day — with no relief granted to the State.  Instead, Maryland's participation in the litigation as an intervening defendant allowed it to vigorously defend its interests and resulted in the Court of Appeals issuing a stay of the district court's

---

[5] The Court of Appeals issued a final decision in favor of Maryland and the FTA on December 19, 2017 - less than six months after Maryland filed its notice of appeal.  *See* Judgment and Opinion, No. 17-5132 (D.C. Cir. Dec. 19, 2017).

[6] Without the expedited appeal schedule requested by Maryland, it is likely this decision would have been even further delayed.

order, reinstating the Record of Decision allowing construction to proceed, and expediting consideration of the appeal.  The fact that the United States did not participate in these actions that were crucial to Maryland, but not to the United States, provides prima facie evidence that the United States cannot "adequately" represent Maryland's interests.

The same course of events could transpire in this litigation, absent intervention by the State as a defendant.  The goal of the United States is not to ensure that the Purple Line project is built, but to ensure that a permit is properly issued under the Clean Water Act.  While there is no doubt that one of Maryland's goals is to maintain a permit that is in compliance with the Clean Water Act, it's ultimate objective is to fully implement the Purple Line project so that the citizens of Maryland and elsewhere can enjoy this new light rail line and the benefits that the Purple Line will bring to the tens of thousands of travelers who are forecast to use the light rail system.  The nature and scope of the United States' ultimate goal in this case is not the same as the State's ultimate goal of utilizing federal, State, and local funds and resources to bring this Project to fruition.  As demonstrated by the course of the litigation in Purple Line I, the United States does not have the same "ultimate objective" as Maryland.  Therefore, intervention as of right should be granted in this case.

Further distinguishing this case from *Stuart* is that, unlike the proposed intervenors in *Stuart*, Maryland played a central role in the process leading up to the decision by the Corps to grant the permit.  Maryland submitted the permit application, provided the Corps with the necessary information relating to the impacts of the permit, and offered the Corps responses to comments submitted by others, including the plaintiffs, on the permit.  The proposed intervenors in *Stuart* did not claim or demonstrate the same level of participation in the legislative process leading to North Carolina's enactment of the law being challenged.

Recognizing that the constitutional law question raised in *Stuart* is dissimilar to the questions raised in their challenge to Maryland's permit, plaintiffs argue that the more rigorous *Stuart* standard for intervention should be extended to cases that involve a State or local government, as well as the federal government, and that do not present the same type of constitutional or statutory defense. Opposition at 5. For example, plaintiffs claim that the United States is "under a legal obligation to represent [the would-be intervenor's] interest," *id*. (citing *In re Richman*, 104 F.3d 654, 660 (4th Cir. 1997)). This argument, however, does not withstand scrutiny. First, *In re Richman* concerned a bankruptcy proceeding specifically governed by a statute that grants standing to trustees to represent debtors, thereby making intervention unnecessary. *Id.*, 104 F.3d at 660. Second, the court found that the proposed intervenor's motion to intervene should be denied because it was untimely, thus not meeting the first eligibility element established by Rule 24 of the Federal Rules of Civil Procedure. *Id*. at 659. In the instant case, there is no statute or regulation that mandates that the Corps and the U.S. Department of Justice will represent the interests of a permit holder or other State or local government in a permit challenge. Also, the application to intervene in the instant case has been timely made.

Plaintiffs' reliance (Opposition at 5) on *Makhteshim Agan of North America, Ins. v Nat'l Marine Fisheries Serv.*, No. 18-cv-00961-PWG, 2018 WL 5846816 (D. Md. Nov. 8, 2018) is similarly misplaced. As in *Stuart*, the proposed intervenors in *Makhteshim* were not the holders of a permit from the federal agency named defendant. Thus, the proposed intervenors in both *Stuart and Makhteshim* were outsiders to the decision under review. Maryland's status as the applicant for and holder of the permit from the federal agency is vastly different in kind and scope from the status of the proposed intervenors in the agency decision at issue in *Stuart and*

*Makhteshim*.  Placing Maryland in the same category as the proposed intervenors in *Stuart and Makhteshim* would require the Court to ignore the substantial property interest that Maryland has as the owner of the permit under review by the Court.  Such a result would not be consistent with other rulings wherein courts have relaxed the standard regarding adequacy of representation when a case involves a challenge to a federal agency's action, as opposed to a challenge to a federal statute.  For example, the D.C. Circuit has found that in cases involving a challenge to federal agency action, the obligation of the federal agency is "to represent the interests of the American people, as expressed in [the statute underlying the federal agency action]."  *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003).  In finding that the government of Mongolia should be allowed to intervene as of right in a case involving administration of the Endangered Species Act, the court found that the interests of the proposed intervenor would be more "narrow and parochial" than the interests of the federal agency and thus not adequately represented by the federal agency's lawyers.  *Id.*, 322 F.3d at 737.  *See also Sierra Club v. Espy*, 18 F.3d 1202, 1207-08 (5th Cir. 1994) (Potential intervenor with existing timber sale contracts granted intervention because "[t]he government must represent the broad public interest, not just the economic concerns of the timber industry."); *Sierra Club v. Glickman* 82 F.3d 106, 110 (5th Cir. 1996); *WildEarth Guardians v. Salazar*, 272 F.R.D. 4, 15 (D.D.C. 2010) ("it is well-established that governmental entities generally cannot represent the 'more narrow and parochial financial interest' of a private party") (quoting *Fund for Animals*, 322 F.3d at 735).  The same is true in this case.  Maryland's interest in upholding the permit is narrower than the Corps' interest, given that this particular permit is needed at this time in order to complete a project for which construction is well underway.  Moreover, the Corps does not represent Maryland's more local, *i.e.* "parochial," financial interest in the permit.  The Corps' mission under the Clean Water

Act does not encompass protecting the financial interests of the permittee. Yet, absent the permit, the Project will be delayed, causing needless cost increases that would be borne by all of Maryland's citizens.

II.   **GIVEN THE INTERESTS AT STAKE, AND BECAUSE INTERVENTION WILL NOT IMPEDE THE COURT'S ABILITY TO MANAGE THE LITIGATION, PERMISSIVE INTERVENTION SHOULD BE GRANTED.**

The primary consideration for granting permissive intervention under Fed. R. Civ. P. 24(b) is whether the proposed intervention will cause "undue delay or prejudice the adjudication of the original parties' rights." Plaintiffs (after making extraneous arguments accusing Maryland of "negligence" for not applying for the Section 404 permit in 2013 when FTA issued its Record of Decision ) appear to argue that allowing permissive intervention at this stage of the litigation will cause undue delay in the resolution of this lawsuit. Opposition at 10.[7] Plaintiffs again rely (*id*. at 10-11) upon *Makhteshim* and the court's finding in that case that adding additional plaintiffs would needlessly delay and complicate a case that the court previously described as having a "long and tortuous history." *Makhteshim*, 2018 WL 5846816 at *1. The proposed intervenors in that case were "four conservation or commercial fishing organizations" none of which had a direct interest in the pesticide registrations at issue in the case. *Id.* at *2.

However, as previously noted, *Makhteshim* is clearly distinguishable here. First, it cannot be said that this case has a long and tortuous history. Plaintiffs filed this lawsuit in January 2019. No dispositive motions have been filed. *See* Scheduling Order, ECF 19. As evidenced by Maryland's participation in the Purple Line I litigation (see pages 6-9 above), it is

---

[7] Plaintiffs claim (at 9) that Maryland injected "irrelevant" arguments in the two previous lawsuits brought by these plaintiffs is both unwarranted and incorrect. As discussed above, pages 6-9, Maryland's participation in the prior lawsuits contributed greatly to the resolution of the merits of the case in a timelier fashion than would otherwise have happened.

not in Maryland's interest to delay or complicate litigation affecting its ability to construct and operate the Purple Line project. It is Maryland's desire to litigate this matter quickly and efficiently. Given Maryland's clear interest in defending its permit, and its desire to seek an expeditious resolution to this litigation, a grant of permissive intervention is warranted.

## CONCLUSION

Maryland Department of Transportation and Maryland Transit Administration respectfully request that this Court grant their motion to intervene as defendants in this case.

Dated:  May 20, 2019

Respectfully submitted,

BRIAN E. FROSH
Attorney General of Maryland

*s/ Julie T. Sweeney*
JULIE T. SWEENEY
Assistant Attorney General
Maryland Transit Administration
6 St. Paul Street, Suite 1200
Baltimore, MD  21202-1614
Telephone:  410.767.3844
Email: JSweeney@mta.maryland.gov
Bar No. 06233

*s/ Albert M. Ferlo*
ALBERT M. FERLO
Perkins Coie LLP
700 Thirteenth Street, N.W., Suite 600
Washington, D.C.  20005-3960
Telephone:  202.654.6200
Facsimile:  202.654.6211
Email: aferlo@perkinscoie.com
Bar No. 20830

Attorneys for Proposed Defendant-Intervenor
Maryland Department of Transportation and
Maryland Transit Administration

**CERTIFICATE OF SERVICE**

I hereby certify that on May 20, 2019, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Maryland by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated:  May 20, 2017

*s/ Albert M. Ferlo*
Albert M. Ferlo